8791

DUNLAP *ET AL.* v. ROBINSON *ET AL.*

ADVERSE POSSESSION.   DOCUMENTARY EVIDENCE.   NEW TRIAL.

1. The testimony tending to show defendants claimed title from a common source with, but adversely to, plaintiffs, the issue as to adverse possession was properly submitted to the jury.
2. Whether failure to construe a written document was error does not arise where the construction would be irrelevant to issue on trial, and not affect the verdict.
3. Where a judgment was reversed on former appeal because of Court's omission to submit an issue of adverse possession to the jury, which issue was submitted on retrial, it was not error to refuse to grant a new trial because the Court differed from the jury in its view of the evidence.

Before GARY, ERNEST, J., February, 1912.   Affirmed.

Action by Joseph J. Dunlap and others against Mittie R. Robinson and others for recovery of possession of real estate. From judgment on verdict for defendants, the plaintiffs appeal.

The plaintiffs' exceptions were as follows:

1. That his Honor erred in charging the jury as follows: "The defendant, Mittie Rebecca, says it is mine, because I have two wills of the daughters of R. D. Dunlap. My mother and my aunt were his daughters, and they willed it to me. These plaintiffs say he deeded it to my father. Now, there is the common source, you see, both claiming from R. D. Dunlap; a set of grandchildren each claiming the title of their grandfather. The plaintiffs say, 'he deeded it to our father.' The defendant says, the granddaughter says, 'my aunts held it by adverse possession, and they willed it to me and they acquired title. It was theirs by adverse possession and they willed it to me.' The plaintiffs say, 'he deeded it to our father, and having died we inherited it from him under the statute of distribution as his heirs at law.' Now, who has the better title? The defendants claim through adverse possession. The plaintiffs claim as the heirs at law under the deed." Because (a) said charge was inconsistent and confusing in the minds of the jury, the two distinct claims of title of common source and adverse possession, and, therefore, was misleading. (b) After charging the jury both plaintiffs and defendant claimed title from a common source and their claims being based on documentary evidence, which it was the duty of the Court to construe, he should have charged them that under said documentary evidence the defendant could not claim by adverse possession.

2. That his Honor erred in submitting to the jury the issue of adverse possession when there was no competent legal evidence adduced tending to show adverse holding of the defendant; or those through whom she claimed, but to

the contrary, the evidence of the defendant denied any adverse holding, and rested her claim solely upon documentary evidence, that is, two wills introduced in evidence.

3. That his Honor erred in charging the jury as follows: "I am talking now about holding it adversely for ten years. Now, there is another theory of this case that might give currency to the idea of adverse possession, and that is expressed in a letter of W. S. Dunlap himself, and that was written August 5, 1883, in Birmingham. Now, I won't read the whole letter to you. I only read that part of it, which, as I say, may give currency to what we know as a parol partition: 'I will get the girls to let you have your new purchase alongside yours there, if you will buy Jemima's children's interest, the line will be about where we established it when we had a sort of division.'" Because (a) said charge was upon the facts, and, therefore, in violation of the Constitution prohibiting Judges to charge upon facts. (b) It was submitting questions of adverse possession to the jury in direct conflict to the position taken by the defendants in their evidence as claiming under the wills introduced, which wills recited that said interest (claimed to be conveyed thereby, of Mrs. Simpson, and Miss Sarah Dunlap, to Mittie Rebecca Robinson) was an undivided one-sixth interest, heired from their father, R. D. Dunlap, hence said charge was confusing and misleading to the jury of the real issues involved.

4. That his Honor erred in failing and refusing to construe the two wills introduced in evidence and testified to as the only bases of the claim of defendant to the lands in dispute, and in leaving it to the jury to decide, whether or not the interest claimed by Mrs. Simpson, the mother of Mrs. Robinson, and her aunt, Miss Dunlap, was a divided or undivided interest, when said documents distinctly said, said claims were an undivided interest.

5. That his honor erred in refusing plaintiffs' motion for a new trial, made upon the minutes of the Court, upon

the grounds that the verdict of the jury was against the preponderance of the evidence; when the evidence established that both plaintiffs and defendant claimed from a common source, their grandfather, R. D. Dunlap, and that plaintiffs had shown better title·from the common source than defendant.

6. That his Honor·erred in refusing plaintiffs' motion for a new trial after holding, "That if I were trying this case without the aid of a jury, I would decide just the opposite to the verdict."

7. That his Honor erred in refusing plaintiffs' motion for a new trial after deciding that the plaintiffs had made out a legal title to the premises in question, and there being no legal evidence of adverse possession sufficient to overcome this legal title in plaintiffs, a new trial should have been ordered.

8. That his Honor erred in refusing plaintiffs' motion for a new trial upon the ground that "the Supreme Court having reversed the finding of the Court upon the former trial of this case upon substantially the same facts as proved upon this trial of the case." Because (a) there is at least one very material difference in the facts proved in this case and that of the former trial, in that the sole defendant testifying to any claim whatsoever upon this trial, Mrs. Robinson, confined her claim to whatsoever rights she had, if any, under the terms of the wills of her mother, Mrs. Simpson, and her aunt, Miss Sarah Dunlap, while upon the former trial, said defendant based her claim not only upon said will of her mother, but also upon ·the claim of adverse possession of her mother and her aunts and herself. (b) His Honor having arrived at a different conclusion from that reached by the jury, and there being no legal evidence to sustain the verdict of the jury, same should have been set aside and new trial granted.

9. That his Honor erred in submitting to the jury as a basis of adverse·possession whether or not there had been a

parol partition of said land, during the life of W. S. Dunlap, pursuant to the terms of several letters of W. S. Dunlap, when there was no evidence other than said letters tending to establish a parol partition, in that there was no evidence that said land was definitely laid off by stakes or boundaries, or measurements or plats, or of any means that was agreed upon by them, and that the parties through whom defendant claimed had occupied certain portions so allotted or assigned, claiming it solely as their own, which would be necessary to start a claim based on adverse possession by reason of parol partition of lands held as tenants in common."

*Messrs. DePass & DePass,* for the appellants, cite: *Instructions as to adverse possession inconsistent with statement that parties claimed from common source:* 39 Col. 577; 11 Col. 161; 1 Col. 345; 11 Penn. 323; 35 Mo. App. 76; 23 Mo. App. 590. *Construction of documentary evidence:* 22 S. C. 288. *Adverse possession:* 2 Rich. L. 627.

*Messrs. Ragsdale & Dixon,* for respondents. *Mr. Ragsdale* cites: *Whether parties claimed title from common source was matter for jury:* 92 S. C. 185; 48 S. C. 243; 53 S. C. 24; 50 S. C. 161. *Adverse possession:* 3 Strob. 498; 64 S. C. 489; 2 Bail. 331; 2 McC. 289; 2 McC. 260; 1 McC. 206; 6 Rich. 62; 8 Rich. 42. *Question for jury:* 95 S. C. 121. *Disavowal of tenancy in common:* 48 S. C. 28. *Husband's possession referred to wife's title:* 1 A. & E. Enc. L. 820; 91 S. C. 348.

April 25, 1914.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is the second appeal herein—the first being reported in 87 S. C. 577, 70 S. E. 313, where a general statement of the facts will be found.

The second trial resulted in a verdict in favor of the defendants, and the plaintiffs appealed upon exceptions which will be reported.

Upon hearing the motion for a new trial, his Honor, the presiding Judge, made the following order:

"The issues of fact in this case were submitted to a jury on the 27th day of February, 1912. After deliberating for several hours, the jury returned a verdict for the defendants for the land in dispute.

"This is a motion for a new trial upon the minutes of the Court. After hearing Mr. DePass, for the motion, I made an oral statement expressing my views, refusing the same, in substance as follows:

" 'Without hesitation, my conclusion is, that if I were trying this case without the aid of a jury, I would decide just the opposite to the verdict. My conclusion being, that the plaintiffs have made out a legal title to the premises in question, on substantially the same state of facts as at the former trial. That the same legal points urged before me were passed upon at the former trial, and the former rulings were reversed by the Supreme Court of the State, who ordered a new trial, because certain issues of fact on the question of adverse possession, were not submitted to the jury. These issues of fact were upon this trial submitted to the jury, who, as above stated, decided them in favor of the defendant. I decline to disturb the finding of the jury for the reason that if such issues were of such importance as to amount to reversible error in not submitting them, I did not see my way clear in the face of the decision of the Supreme Court in setting aside such finding, although I would have arrived at a different conclusion.'

"It is, therefore, ordered, that the motion be, and is hereby, refused."

The appellant's attorneys argued exceptions numbered 1, 2, 4, 5, and 7 together, and we will adopt their classification.

Their contention in these exceptions is that his Honor, the presiding Judge, erred in submitting to the jury the question of adverse possession, as there was no legal evidence to support the same. It is only necessary to refer to the testimony to show that these exceptions cannot be sustained.

*Fourth Exception:*

When all the testimony is considered, it clearly appears that there is no reasonable ground for supposing that the ruling of the Circuit Judge affected the result. Therefore, the question whether it was erroneous does not properly arise.

*Sixth Exception:*

This exception cannot be sustained, for the reason that it is not error for a Circuit Judge to refuse a new trial because he was not disposed to put his judgment against that of the jury. *State* v. *Rhodes,* 44 S. C. 325, 21 S. E. 807, 22 S. E. 306.

*Eighth and Ninth Exceptions:*

What has already been said disposes of these exceptions. Judgment affirmed.

MR. JUSTICE HYDRICK concurs in the result.

MR. JUSTICE GAGE did not sit in this case.